IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

Sarah Webster,                    *

        Plaintiff

                      *

   V.

                      *     CIVIL NO. SKG-12-3620

ACB Receivables Management, Inc.

        Defendant      *


  *    *    *    *    *    *    *    *    *    *    *    *    *

## Memorandum Opinion

Plaintiff, Sarah Webster, by her attorney, Mitchel E. Luxenburg, filed this action against defendant ACB Receivables Management, Inc. ("ACB") alleging that defendant violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, et seq., by attempting to collect a debt owed by Ms. Webster. Plaintiff seeks statutory damages in the amount of $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A). This case has been referred to the undersigned magistrate judge by consent of the parties pursuant to 28 U.S.C. § 636(c) and Local Rule 301.4 (D. Md. 2011).

The parties have filed cross-motions for summary judgment.[1] Briefing is complete. A telephone hearing was held on April 1, 2014. For the reasons set forth below, the Court GRANTS Ms. Webster's motion for summary judgment as to Counts I, II, and III and DENIES the motion as to Count IV. The Court GRANTS ACB's motion for summary judgment as to Count IV but DENIES the same as to Counts I, II, and III. Ms. Webster has also filed a motion to strike an exhibit attached to ACB's briefs filed in support of its motion for summary judgment. The Court DENIES Ms. Webster's motion to strike.

## I. FACTUAL BACKGROUND

The parties largely agree on the facts, with only one notable exception. The parties dispute the date that ACB initially contacted Ms. Webster and informed her of its attempts to collect the debt. Defendant maintains that the initial communication took the form of an FDCPA-compliant "dunning" letter that the collection agency sent to Ms. Webster on November 4, 2010. (Def.'s Mot. Summ. J. & Opp. Pl.'s Mot. Summ. J., ECF No. 44, at 15).[2]

---

[1] On February 3, 2014, plaintiff filed her motion for summary judgment. (ECF No. 36). On February 4, 2014, defendant filed their motion for summary judgment (ECF No. 37) and on February 14, 2014, defendant filed their opposition to plaintiff's motion and in an apparent effort to fully comply with Local Rule 105.2(c) (D. Md. 2011), also styled the submission as a cross motion for summary judgment (ECF No. 44). Both defense motions raise the same issues and are treated as one in the Court's ruling.

[2] As discussed _infra_, Defendant has failed to support this factual position with evidence that is capable of admission. Accordingly, there is no genuine

Plaintiff disagrees, asserting instead that the collection agency initially notified her of the outstanding debt indirectly, by way of ACB's reporting the debt to credit reporting agencies. (Pl.'s Rep. Mem., ECF No. 47, at 18-19).

Ms. Webster testified that she reviewed her credit report in July of 2012 and saw a debt that was being collected and reported by ACB, causing her to contact the agency in an attempt to resolve this mark on her credit history. (Pl.'s Mem. Supp. Pl.'s Mot. Summ. J., ECF No. 36-1, at 1; Def.'s Mot. Summ. J. & Opp. Pl.'s Mot. Summ. J., ECF 44, at 2). Defendant does not dispute this entry on the credit report nor Ms. Webster's testimony as to the date of her discovery of the debt and collection efforts on her credit report.

On July 23, 2012, Ms. Webster mailed a letter to ACB wherein she requested that the agency provide "validation" of the debt. (Pl.'s Mem. Supp. Pl.'s Mot. Summ. J., ECF No. 36-1, at 1; Def.'s Mot. Summ. J. & Opp. Pl.'s Mot. Summ. J., ECF No. 44, at 2). In response to this request, ACB mailed a letter dated August 29, 2012, to Ms. Webster requesting additional information to verify her identity. (Pl.'s Mem. Supp. Pl.'s Mot. Summ. J., ECF No. 36-1, at 1; Def.'s Mot. Summ. J. & Opp. Pl.'s Mot. Summ. J., ECF No. 44, at 2). There is no dispute that this letter did not contain verification of the debt.

dispute as to material fact as to the date of initial collection agency contact.

(Pl.'s Mem. Supp. Pl.'s Mot. Summ. J., ECF No. 36-1, at 1;
Def.'s Mot. Summ. J. & Opp. Pl.'s Mot. Summ. J., ECF No. 44, at
2).

Plaintiff responded via letter dated September 2, 2012,
requesting that ACB "cease and desist" communication with her.
(Pl.'s Mem. Supp. Pl.'s Mot. Summ. J., ECF No. 36-1, at 1;
Def.'s Mot. Summ. J. & Opp. Pl.'s Mot. Summ. J., ECF No. 44, at
2). Lucy Hankinson, an ACB employee, received this letter on
September 12, 2012, at 11:27 a.m. (Pl.'s Mem. Supp. Pl.'s Mot.
Summ. J., ECF No. 36-1, at 1; Def.'s Mot. Summ. J. & Opp. Pl.'s
Mot. Summ. J., ECF No. 44, at 2). Ms. Hankinson acknowledged
receipt and review of the letter, but in her affidavit stated
that she "simply failed to see" the cease and desist request,
instead mailing Ms. Webster an additional request for
identifying information and forwarding her file to Darrell Cole,
an ACB debt collector. (Decl. of Lucy Hankinson, ECF No. 49-1,
2). Three and one-half hours later (4:41 p.m.), ACB received
verification from Experian, a credit reporting agency, that Ms.
Webster was indeed the person from whom ACB was attempting to
collect the debt. (Pl.'s Mem. Supp. Pl.'s Mot. Summ. J., ECF
No. 36-1, at 1; Def.'s Mot. Summ. J. & Opp. Pl.'s Mot. Summ. J.,
ECF No. 44, at 2). Mr. Cole acknowledged receipt of the file
that evening, but he testified in his affidavit that due to a
"momentar[y] distraction" or a "misread[ing] of the screen,"

4

manually overrode a computer code that was intended to prevent

further collection activities on Ms. Webster's file, generating

an additional request for payment that was sent the following

day, September 13, 2012.  (Decl. of Darrell Cole, ECF No. 49-2,

2).

## II. STANDARD OF REVIEW

Summary judgment under Rule 56 is appropriate when "there

is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(a).  A genuine dispute remains "if the evidence is such that

a reasonable jury could return a verdict for the nonmoving

party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106

S. Ct. 2505, 2508, 91 L. Ed. 2d 202 (1986).  A material fact is

one "that might affect the outcome of the suit under the

governing law."  Id.  The party moving for summary judgment has

the burden of demonstrating the absence of any genuine issue of

material fact.  Fed. R. Civ. P. 56(a); Pulliam Inv. Co. v. Cameo

Props., 810 F.2d 1282, 1286 (4th Cir. 1987).

When considering a motion for summary judgment, the court

views all facts and makes all reasonable inferences in the light

most favorable to the nonmoving party.  Matsushita Elec. Indus.

Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348,

1356, 89 L. Ed. 2d 538 (1986).  The non-moving party must show

that specific, material facts exist to create a genuine, triable

issue.  Id.; see also Celotex Corp. v. Catrett, 477 U.S. 317,

324, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986).  On those

issues for which the nonmoving party has the burden of proof, it

is his or her responsibility to oppose the motion for summary

judgment with affidavits or other admissible evidence specified

in the rule.  Fed. R. Civ. P. 56(c); Mitchell v. Data Gen.

Corp., 12 F.3d 1310, 1315-16 (4th Cir. 1993).  If a party fails

to make a showing sufficient to establish the existence of an

essential element on which that party will bear the burden of

proof at trial, summary judgment is proper.  Celotex, 477 U.S.

at 322-23, 106 S. Ct. 2548.

The role of the court at the summary judgment stage is not

to "weigh the evidence and determine the truth of the matter,"

but rather to determine whether "there are any genuine factual

issues that properly can be resolved only by a finder of fact

because they may be resolved in favor of either party."

Anderson, 477 U.S. at 249-50, 106 S. Ct. 2505.  The issue is

"whether the evidence presents a sufficient disagreement to

require submission to a jury or whether it is so one-sided that

one party must prevail as a matter of law."  Id. at 251-52, 106

S. Ct. 2505.

The fact that parties file cross-motions for summary

judgment does not generally relieve the court of its obligation

to determine whether there are disputes as to material fact

which prevents entry of judgment as a matter of law.  <u>Bryant v. Better Bus. Bureau of Greater Md., Inc.</u>, 923 F. Supp. 720, 729 (D. Md. 1996) ("[C]ross-motions for summary judgment do not automatically empower the court to dispense with the determination of whether questions of material fact exist.") (quoting <u>Lac Courte Oreilles Band of Lake Superior Chippewa Indians v. Voigt</u>, 700 F.2d 341, 349 (7th Cir.), <u>cert denied</u>, 464 U.S. 805, 104 S. Ct. 53, 78 L. Ed. 2d 72 (1983)).  When cross-motions for summary judgment demonstrate a basic agreement, however, concerning what legal theories and material facts are dispositive, they may be probative of the lack of a factual dispute.  <u>Id.</u> (citing <u>Shook v. United States</u>, 713 F.2d 662, 665 (11th Cir. 1983)).

## III. DISCUSSION

### A.    The Fair Debt Collection Practices Act

Congress enacted the FDCPA to curb abusive debt collection practices, to ensure that debt collectors who play by the rules are not competitively disadvantaged, and to provide a framework to facilitate consistent state action to protect consumers.  15 U.S.C. § 1692(e).  Consonant with its purposes, the FDCPA regulates interactions between consumer debtors and debt collectors.[3]  The FDCPA prohibits a wide range of untoward debt

---

[3] Under the Act, a debt "means any obligation or alleged obligation of a consumer to pay money arising out of a

7

collection practices, such as making false representations as to

a debt's character, amount, or legal status, § 1692e(2)(A);

communicating with consumers at "unusual time[s] or place[s]," §

1692c(a)(1); the use of abusive language, § 1692d(1); and

threats or actual violence, § 1692d(2).

The FDCPA is enforced through administrative action and

private lawsuits.  Jerman v. Carlisle, McNellie, Rini, Kramer &

Ulrich LPA, 559 U.S. 573, 577, 130 S. Ct. 1605, 1609, 176 L. Ed.

2d 519 (2010).  To prevail in a private action, the plaintiff

must prove that "[he or she] has been the object of collection

activity arising from consumer debt, (2) the defendant is a

debt[] collector as defined by the FDCPA, and (3) the defendant

has engaged in an act or omission prohibited by the FDCPA."

Stewart v. Bierman, 859 F. Supp. 2d 754, 759-60 (D. Md. 2012)

(citation omitted); see Sterling v. Ourisman Chevrolet of Bowie,

Inc., 943 F. Supp. 2d 577, 585 (D. Md. 2013).  In the parties'

---

transaction" where the consideration is "primarily for personal,
family, or household purposes."  15 U.S.C. § 1692a(5).  The
FDCPA defines a consumer as "any natural person obligated or
allegedly obligated to pay any debt."  15 U.S.C. § 1692a(3).
Notwithstanding a number of exclusionary provisions found in §
1692a(6)(A)-(F), the Act understands a debt collector as "any
person who uses any instrumentality of interstate commerce . . .
in any business the principal purpose of which is the collection
of any debts."  15 U.S.C. § 1692a(6).  The parties are in
agreement that Ms. Webster is a consumer, ACB is a debt
collector, and that plaintiff's alleged $70.00 obligation is a
debt as contemplated by the Act.  (Pl.'s Rep. Mem., ECF No. 47,
at 2; Def.'s Mot. Summ. J. & Opp. Pl.'s Mot. Summ. J., ECF No.
44, at 2-3).

motions for summary judgment, there is no dispute that Ms. Webster has been the object of collection activity arising from consumer debt and that ACB is a debt collector under the FDCA. The parties disagree as to whether ACB has violated the FDCPA, and, if so, whether the application of an affirmative defense absolves liability.

**B.    The Alleged FDCPA Violations**

Both parties move the Court to grant summary judgment in their favor on all counts of the Complaint.  Accordingly, the Court shall address each count in turn.

**1.    Count I: Defendant's Continued Communication**

This count requires the Court to determine whether ACB violated the FDCPA and, if so, whether an affirmative defense applies.  For the following reasons, the Court concludes that ACB violated the Act and that it is not entitled to an affirmative defense as a matter of law.

Plaintiff alleges that ACB violated the FDCPA by continuing to communicate with her after receiving her mailed cease and desist request.  Notwithstanding several exceptions inapplicable here, § 1692c(c) provides that a debt collector must cease communication with a consumer who has requested the same in writing.  15 U.S.C. § 1692c(c).  If the consumer makes his or her request by mail, then the statute imputes notice to the debt collector upon receipt.  Id.  It is indisputable that Defendant

twice violated § 1692c(c) of the FDCPA by sending Ms. Webster

two letters, dated September 12, 2012, and September 13, 2012,

after receiving her mailed "cease and desist" request.  However,

ACB invokes the "bona fide error" defense under 15 U.S.C. §

1692k(c).

The "bona fide error" defense is "an affirmative defense

that insulates debt collectors from liability even when they

have violated the FDCPA." Puffinberger v. Commercion, LLC, No.

SAG-13-1237, 2014 WL 120596, at *4 (D. Md. Jan. 10, 2014)

(quoting Johnson v. Riddle, 443 F.3d 723, 727 (10th Cir. 2006)).

The bona fide error provision provides:

> A debt collector may not be held liable in any action
> brought under [the FDCPA] if the debt collector shows
> by a preponderance of evidence that the violation was
> not intentional and resulted from a bona fide error
> notwithstanding the maintenance of procedures
> reasonably adapted to avoid any such error.

15 U.S.C. § 1692k(c).  Defendant bears the burden of proof to

demonstrate that its violations were "1) unintentional, 2) []

bona fide error[s], and 3) made despite the maintenance of

procedures reasonably adapted to avoid the error."  Johnson, 443

F.3d at 727-28; see also Warren v. Sessoms & Rogers, P.A., 676

F.3d 365, 375 (4th Cir. 2012) (placing the burden on the

collection agency to prove a "bona fide error"); cf. Sayyed v.

Wolpoff & Abramson, 485 F.3d 226, 232 (4th Cir. 2007) (stating

that § 1692k(c) "offers a kind of qualified immunity to debt collectors").

With regard to first element of the defense, the Supreme Court recently examined the FDCPA's legislative history to determine what types of violations are "not intentional." Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA, 559 U.S. 573, 581-96, 130 S. Ct. 1605, 1611-20, 176 L. Ed. 2d 519 (2010). The Court construed the bona fide error exception as applying to unintentional acts such as clerical or factual mistakes,[4] Jerman, 559 U.S. at 599 n.12, 605 S. Ct. 1605, but not to FDCPA violations that result from a debt collector's incorrect interpretation of the Act's requirements. Id. at 605; Bradshaw v. Hilco Receivables, LLC, 765 F. Supp. 2d 719, 731 (D. Md. 2011).

The second element of the defense, that such errors be bona fide, requires that the error be "a genuine mistake, as opposed to a contrived mistake." Kort v. Diversified Collection Servs., Inc., 394 F.3d 530, 538 (7th Cir. 2005).

To satisfy the third element of the defense, "[t]he procedures themselves must be explained, along with the manner in which they were adapted to avoid the error. Only then is the

---

[4] The Jerman Court expressly declined to identify the types of factual mistakes that qualify under the bona fide error defense. Jerman, 559 U.S. at 591 n.12.

mistake entitled to be treated as one made in good faith."

<u>Rose</u>, 2013 WL 1563655, at *4 (quoting <u>Reichert v. Nat'l Credit</u>

<u>Sys., Inc.</u>, 531 F.3d 1002, 1007 (9th Cir. 2008)).

 **a. The acts of ACB's employees were unintentional.**

 Applying <u>Jerman</u> to this case,[5] the evidence, viewed in the

light most favorable to Ms. Webster, establishes that ACB's

violations of the FDCPA were not intentional.  Defendant has

submitted affidavits from its employees that demonstrate that

the September 12 and 13 communications resulted from human

errors.  Human errors, ACB argues, are more closely akin to

clerical or factual mistakes rather than mistakes of law.  The

first human error occurred when one of ACB's employees, Lucy

Hankinson,[6] failed to "pick up" the cease and desist language

contained in Ms. Webster's September 2, 2012, correspondence.

(Def.'s Resp. to Pl.'s Rep., ECF No. 49, at 3).  This is

obviously a serious error, especially given the clarity of Ms.

Webster's request and the importance of this consumer right.

---

[5] The Fourth Circuit has not interpreted the intent element of
the bona fide error defense since the <u>Jerman</u> decision.  <u>But see</u>
<u>Warren</u>, 676 F.3d at 375 (remanding so that the district court
could resolve the defendant's bona fide error defense); <u>McLean</u>
<u>v. Ray</u>, 488 Fed. App'x 677, 683 (4th Cir. 2012) (affirming the
district court's acceptance of the bona fide error defense where
a defendant attempted to collect an incorrect amount on a debt
but a colorable basis existed for this erroneous figure).

[6] Ms. Hankinson married between the events of 2012 and the
current litigation.  Therefore, her maiden name, Johnson,
appears throughout the record.

And, as a direct result of this error, Ms. Hankinson sent the
September 12 letter to Ms. Webster and forwarded her file to
Darrell Cole, another one of ACB's employees. (Def.'s Resp. to
Pl.'s Rep., ECF No. 49, at 4). Mr. Cole committed the second
error, when he, "due to a believed distraction," disregarded a
"red flag" code designed to notify ACB's collectors that the
consumer had disputed the debt and that no further collection
correspondence were to be generated. Instead, Mr. Cole manually
entered the code that directed ACB's computer system to generate
the September 13 collection notice. (Def.'s Resp. to Pl.'s Rep.
ECF No. 49, at 4). Again, this is a serious error, flatly
defeating an important consumer right.

Defendant finds support for its position in Rose v. Roach,
No. 6:12-CV-00061, 2013 WL 1563655 (W.D. Va. Apr. 12, 2013),
where the alleged violation of the FDCPA consisted of a
collection agent's failure to recite the statute's mandated
disclosures in a telephone call to a debtor. Rose, 2013 WL
1563655, at *2. The agent became distracted and lost his place
in a prepared script that the collection agency had designed to
be FDCPA compliant. Id. The court stated that this was neither
"a judgment or legal error" but instead was the "result of a
human error" protected by the bona fide error defense. Id. at
6.

Plaintiff counters that, under Jerman, ACB must show that the underlying acts (e.g. human errors) that lead to the FDCPA violations were not intentional.[7] She avers that ACB has failed to meet its burden. To support her position, plaintiff relies primarily on Allen v. Checkredi of Ky., LLC, No. 09-103-DLB, 2010 WL 4791947 (E.D. Ky. Nov. 17, 2010).

In Allen, the debt collector violated the FDCPA by disclosing private information about the debtor to a third party and also by failing to provide timely written notice that the debt was being collected. Allen, 2010 WL 4791947, at *11. The court read Jerman to "indicate[] that 'not intentional' covers only a defendant who did not intend to commit the act that violated the FDCPA." Id. at *10. Applying Jerman to the facts of the case, the court rejected the defendant's bona fide error defense. However, the court noted that "[a] review of [d]efendant's memoranda and the record reveal[s] no evidence that [d]efendant's communication was not intentional. Id. at *11 (emphasis added).

The flaw in plaintiff's argument lies not in its premise—that Jerman requires ACB to show that the underlying acts that caused the FDCPA violations were not intentional—but in its

---

[7] Defendant does not dispute that Ms. Webster accurately restates Jerman's holding. Applying Jerman, the Rose court found that the collection agent's failure to recite the entirety of the script was not an intentional act. Rose, 2013 WL 1563655, at 6.

focus.  Plaintiff centers on her preferred interpretation of
Jerman, but fails to counter ACB's affidavits wherein its
employees affirm that their errors were not intentional.  Unlike
the defendant in Allen, ACB has supported its factual position
by "citing to particular parts of materials in the record."
Fed. R. Civ. P. 56(c).  The record before the Court illustrates
that the two mistakes in this case were not intentional acts.
Applying Jerman, ACB has satisfied its burden to show by a
preponderance of the evidence that the underlying acts that
resulted in the violations of the FDCPA were not intentional.

**b. Ms. Hankinson and Mr. Cole's errors were bona fide.**

Both Ms. Hankinson and Mr. Cole have submitted declarations
to this Court that their actions were the result of good faith
human errors.  There is no evidence before the Court that
indicates that the employees' mistakes were anything but bona
fide.  As Ms. Webster has failed to cite any material in the
record to support her factual position, the evidence "is so one-
sided that [ACB] must prevail as a matter of law" with regard to
the first and second prongs of its bona fide error defense.
Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52, 106 S.
Ct. 2505, 91 L. Ed. 2d 202 (1986).

**c. ACB did not maintain procedures reasonably adapted to
avoid human error.**

Having prevailed on the first two elements of the bona fide error defense, ACB next must show that its employees' errors occurred "notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c). To satisfy its burden of proof on this element, ACB cites to the declarations of its owner, Alex Shnayderman, as well as to a copy of the business's policies and procedures regarding the FDCPA training of its employees. (Def.'s Resp. to Pl.'s Rep., ECF No. 49 at 5-8).

Plaintiff's response is two-fold. First, Ms. Webster attacks the required nexus between the procedures and the specific errors that occurred. (Pl.'s Rep., ECF No. 47, 12). Second, Ms. Webster asks the Court to strike Mr. Shnayderman's declarations, arguing that inconsistencies between these two documents warrants application of the "sham affidavit" rule. (Pl. Rep., ECF No. 47, 6).

### i. ACB fails to show a nexus between its procedures to ensure FDCPA compliance and the specific errors that occurred.

Turning to the procedures, it is uncontested that ACB has maintained a set of rules on FDCPA compliance. ACB has attached its four-page compliance policy. (ECF No. 44-1, at 17-20). What Ms. Webster does contest is the nexus between the procedures and the errors that occurred, arguing that the policy was not reasonably adapted to avoid human errors. Defendant

responds with the declarations of Mr. Shnayderman (ECF No. 44-1, at 2), Ms. Hankinson, (ECF No. 49-1, at 1-3), and Mr. Cole, (ECF No. 49-2, at 1-2). All three affirm that ACB's employees undergo extensive training in the FDCPA, with the understanding that the passage of further periodic FDCPA testing is required for continued employment. (ECF No. 44-1, at 2; ECF No. 49-1, at 1; ECF No. 49-2, at 1).

However, ACB fails to demonstrate a nexus between the procedural safeguards and the types of errors that occurred. Though the written procedures state that contested debt files are marked "[c]onsumer disputing account," to prevent employees from generating further correspondence on the file, (ECF No. 44-1, at 17-20), neither the procedures nor the declarations describe any redundancy or safeguards in the system reasonably adapted to catch the stunning employee errors, by these two employees on the same consumer matter.

The absence of procedures in this area is in contrast with Rose, which ACB relies on for much of its bona fide error defense. In finding that the defendant maintained procedures reasonably adapted to prevent its employees from departing from their prepared script, the Rose court noted that the defendant's Compliance Director was responsible for monitoring "one call per collector per week." Rose, 2013 WL 1563655, at *5. As this was exactly the type of error that occurred, the court concluded

that the defendant met the procedural requirement. Id. at *4.
In this case, ACB has failed to present any evidence of
redundancy or safeguards in its procedures to prevent the
mistaken violation of the FDCPA by its employees.  Much like the
collection agency in Rose, ACB could have had one of its
supervisors periodically monitor incoming mail to ensure that
all language triggering FDCPA obligations had been acknowledged.
That would have addressed and perhaps caught Ms. Hankinson's
mistake.  Perhaps incoming mail could be processed in some
fashion to allow a word search for key language, like "cease and
desist."  Also, ACB could have required a signoff by a second
employee or some additional process (key strokes) before manual
override of a "red flag" code was permitted.  Either procedure
obviously would address Mr. Cole's error.

It is clear that the quid pro quo in the FDCPA for
forgiveness for human errors resulting in violations of the Act
is the maintenance of a system that will make such human errors
rare.  ACB has failed to demonstrate a robust, effective system
designed to minimize the type of errors that occurred here which
resulted in indisputable violations of important consumer
rights.

As ACB has failed to meet its burden on the third prong of
the bona fide error defense, that is, proof of "procedures
reasonably adapted to avoid any such errors,"  the Court

concludes that Ms. Webster is entitled to judgment as a matter
of law as to Count I.

**ii.  Mr. Shnayderman's declaration is not a sham affidavit.**

Given the context of summary judgment, the Court declines
to strike the affidavit of Mr. Shnayderman.  "[T]o avoid
infringing upon the province of the fact finder, application of
the sham affidavit rule at the summary judgment stage must be
carefully limited to situations involving flat contradictions of
material fact."  Mandengue v. ADT Sec. Sys., Inc., No. ELH-09-
3103, 2012 WL 892621, at *18 (D. Md. Mar. 14, 2012); see also
Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 806, 119 S.
Ct. 1597, 1603, 143 L. Ed. 2d 966 (1999) (stating that a party
cannot create a genuine issue of fact by filing an affidavit
that "flatly contradicts" the party's prior statements).  A
party's sworn statements that exhibit "minor inconsistencies"
resulting from "an honest discrepancy, a mistake, or newly
discovered evidence" should not be disregarded.  Mandengue, 2012
WL 892621, at *18 (citing Van Asdale v. Int'l Game Tech., 577
F.3d 989, 998-99 (9th Cir. 2009)).

Here, any inconsistencies between Mr. Shnayderman's
deposition and his declaration are not so egregious as to flatly
contradict each other.  Plaintiff principally relies upon
discrepancies between Mr. Shnayderman's statements describing
the actions of Ms. Hankinson and Mr. Cole.  (ECF No. 47, 11).

With regard to Ms. Hankinson's actions, Ms. Webster has failed to cite any examples of inconsistent statements made by Mr. Shnayderman. Though Mr. Shnayderman indeed stated for the first time in his declaration that Ms. Hankinson had erred, (ECF No. 44-1, 4), he was not asked in his deposition about Ms. Hankinson's work on the file. (ECF No. 47-1, at 7, 15).

On the other hand, Mr. Shnayderman was asked about Mr. Cole's handling of the file, to which he responded that Cole "never did anything." (ECF No. 47-1, at 15). However, Mr. Shnayderman quickly revised this statement, vaguely mentioning that a change in the file resulted in generation of the September 13 collection notice. (ECF No. 47-1, at 15). In his later declaration, Shnayderman states that Cole "erroneously" entered a computer code that resulted in the collection notice being sent to Ms. Webster. (ECF No. 44-1, at 7).[8] Plaintiff offers no evidence that demonstrates that these minor inconsistencies were anything other than good faith mistakes.

Exemplifying the narrow circumstances that warrant application of the sham affidavit rule, Judge Ellen Lipton Hollander in <u>Mandengue v. ADT Sec. Sys., Inc.</u>, No. ELH-09-3103,

---

[8] As Ms. Webster notes, Mr. Shnayderman lacked personal knowledge to testify about Ms. Hankinson's and Mr. Cole's actions. (ECF No. 47, at 8). Defendant remedied this omission by submitting declarations from each employee, outlining the circumstances of their respective mistakes. (ECF No. 49-1, at 1-3; ECF No. 49-2, at 1-2).

2012 WL 892621 (D. Md. Mar. 14, 2012), declined to disregard a party's later affidavit that contradicted her deposition testimony in at least six instances. Id. at *18. Judge Hollander reasoned that these discrepancies "may be fruitful avenues of cross-examination at trial," but that none were "so stark as to justify invocation of the sham affidavit rule." Id. Judge Hollander's reasoning is applicable here, as these inconsistencies fail to rise to level of flat contradictions but may nevertheless have proven fruitful on cross-examination.

### 2. Counts II and III: Alleged Violations of § 1692g

As both Counts II and III allege violations of § 1692g and thus implicate many of the same issues, the Court shall resolve them together. Adjudicating these claims requires the Court to first affix the date of initial communication from the debt collector to the consumer. For the reasons that follow, the Court finds that there is no genuine dispute as to material fact regarding the date of the initial communication and that it occurred in early July of 2012. Based on this date of initial communication, the Court concludes that Ms. Webster is entitled to judgment as a matter of law with regard to both Count II, which alleges that ACB failed to comply with the statute's disclosure requirements, and Count III, which alleges that ACB failed to provide verification of the debt.

Under § 1692g, a debt collector's disclosure obligations arise at two points. First, the debt collector must satisfy its disclosure requirement within five days of the initial communication. § 1692g(a). Second, the debt collector is obligated to provide the consumer with verification of the debt if he or she requests the same within thirty days of the initial communication. § 1692g(b).

Plaintiff argues that ACB's initial communication with her regarding the debt occurred indirectly, by way of ACB's reporting the debt to credit reporting agencies. (Pl.'s Rep. Mem., ECF No. 47, at 18-19). As ACB concedes that it reported Ms. Webster's debt to credit reporting agencies, it is undisputed that there was an indirect communication to Ms. Webster in July of 2012. However, ACB argues that the "initial communication" took place earlier in the form of a November 4, 2010 "dunning" letter that the collection agency sent to Ms. Webster.

In support of its position, ACB cites Mr. Shnayderman's declaration and three exhibits: a letter that Mr. Shnayderman sent to the Maryland Commissioner of Financial Regulation, a blank form dunning letter allegedly representative of the initial communication, and a recorded and transcribed statement of Ms. Webster. Plaintiff responds that the materials cited do not establish a genuine dispute because they "cannot be

presented in a form that would be admissible in evidence." Fed. R. of Evid. 56(c)(2). The Court agrees with Ms. Webster's position. Each piece of evidence will be discussed in turn.

### a. Mr. Shnayderman's Statement in the Declaration is Inadmissible.

Mr. Shnayderman's declaration states that "a computer generated dunning letter was forwarded" on November 4, 2010. (ECF No. 44-1, 3). Federal Rule of Civil Procedure 56 (c)(4) provides that affidavits or declarations used to support a motion for summary judgment "must be made on personal knowledge" and "set out facts that would be admissible in evidence." Fed. R. Civ. Pro. 56(c)(4). Federal Rule of Evidence 602 embodies this personal knowledge requirement. Fed. R. Evid. 602. To satisfy the rule, evidence must be introduced that is "sufficient to support a finding that the witness has personal knowledge of the matter." Id. The witness must have actually observed the fact. Fed. R. Evid. 602 Advisory Committee Note.

Mr. Shnayderman does not, however, have personal knowledge that "a computer generated dunning letter was forwarded" on November 4, 2010. As Mr. Shnayderman stated in his deposition (ECF No. 47-1, 4), ACB employs Lason, a third party vendor, to send out these letters. ACB has failed to submit an affidavit from Lason. Moreover, there is no electronic record to support that the letter was ever sent. Therefore, Mr. Shnayderman's

declaration does not establish the requisite personal knowledge of the mailing because the basis of his averment is absent, and therefore his statement is inadmissible.

### b. Mr. Shnayderman's Letter to the Maryland Commissioner of Financial Regulation is Inadmissible.

On December 4, 2012, Mr. Shnayderman sent a letter to the Office of the Maryland Commissioner of Financial Regulation stating that his agency had sent initial notice to Ms. Webster on November 4, 2010. (ECF No. 36-10, 1).

As "written assertions" fall under the hearsay umbrella, Mr. Shnayderman's written statement, which was not made while testifying at the current trial or a hearing, is hearsay if offered to prove that ACB sent its first notice on November 4, 2010. Unless a hearsay exception applies, the statement is inadmissible.

Federal Rule of Evidence 803 provides that, "regardless of whether the declarant is available as a witness," certain records of a regularly conducted activity "are not excluded by the rule against hearsay." Fed. R. Evid. 803(6). Commonly referred to as the business records exception, 803(6) applies to a "record of an act, event, condition, opinion, or diagnosis" if five requirements are met.[9] First, the record must be "made at

---

[9] The Federal Rules of Evidence define "record" to include a "memorandum, report, or date compilation." Fed. R. Evid. 101(b)(4).

or near the time by—or from information transmitted by—someone with knowledge." Id. 803(6)(A). Second, the record must be "kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit." Id. 803(6)(B). Third, "making the record [must be] a regular practice of that activity." Id. 803(6)(C). Fourth, the first three requirements must be "shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification." Id. 803(6)(D). Fifth, the exception will only apply if "neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness." Id. 803(6)(E).

As the Advisory Committee explains, business records are presumed to be unusually reliable as the product of "systematic checking, by regularity and continuity which produce habits of precision." Fed. R. Evid. 803 Advisory Committee Note. Moreover, "businesses depend on such records to conduct their own affairs; accordingly, the employees who generate them have a strong motive to be accurate and none to be deceitful." Doali-Miller v. SuperValu, Inc., 855 F. Supp. 2d 510, 516 (D. Md. 2012) (quoting Certain Underwriters at Lloyd's, London v. Sinkovich, 232 F.3d 200, 204-05 (4th Cir. 2000)). Simply put,

"routine and habitual patterns of creation lend reliability to business records."  Id. (quoting Sinkovich, 232 F.3d at 205).

Here, Mr. Shnayderman's written assertion fails to satisfy this exception.  First, the recordation was not created "at or near the time" of the event, as the letter was written over two years after the notice was allegedly sent.  Fed. R. Evid. 803(6)(A).  Cf. Doali-Miller, 855 F. Supp. 2d at 516-17 (finding that a one day gap between the event and recordation did not implicate lapse of memory concerns).  Also, there is no showing that Mr. Shnayderman had personal knowledge to support this assertion as required by Federal Rule of Evidence 602.  To the extent Mr. Shnayderman drafted this memorandum using other business records, this statement is hearsay within hearsay, admissible only if "each part of the combined statements conforms with an exception" to the rule against hearsay.  Fed. R. Evid. 805.

Though a collection agency may, as a "regular practice," preserve written contact with a state regulatory agency "in the course of a regularly conducted activity," ACB has not shown that it can produce a "qualified witness" at trial.  Id. 803(6)(B)-(D).  Mr. Shnayderman stated in his deposition that his collection agency uses a third-party to generate initial notices.  By definition, neither Mr. Shnayderman nor his employees would be qualified under Rule 602 to attest to this

assertion at trial.  Indeed, the "source of [this] information

[and] method or circumstances of preparation indicate a lack of

trustworthiness." Fed. R. Evid. 803(6)(E).  Moreover, despite

at least three discovery requests by Ms. Webster, ACB has not

produced business records or any employee of Lason to support

its assertion that the initial notice was sent on November 4,

2010.  Thus, this letter is inadmissible.

### c. The Blank Form Dunning Letter is Inadmissible.

Attached to Mr. Shnayderman's declaration, ACB has included

a blank form dunning letter that allegedly represents the

correspondence that Lason sent to Ms. Webster.[10]  While this

exhibit is conspicuously FDCPA compliant, the Court finds that

it is inadmissible because ACB cannot "produce evidence

sufficient to support a finding that the item is what the

proponent claims it is." Fed. R. Evid. 901(a).

While authenticity is a special aspect of relevancy, it

also insures that the evidence is trustworthy.  Lorraine v.

Markel American Ins. Co., 241 F.R.D. 534, 542 (D. Md. 2007).

Rule 901(b) provides a list of examples of describing how

authentication may be accomplished.  Of this non-exclusive list,

---

[10] Ms. Webster moves to strike this exhibit as a sanction for
ACB's failure to respond to discovery requests regarding Lason.
As the Court has considered this evidence, Ms. Webster's motion
to strike is hereby DENIED.

three stand out as possible avenues towards authentication of the letter.[11]

First, ACB could authenticate the letter through the testimony of a witness with knowledge. Fed. R. Evid. 901(b)(1). However, ACB has failed to produce a qualified witness. None of its own employees have personal knowledge that Lason sent this form letter. Though Lason's employees may have the requisite knowledge, ACB has failed to produce them. Second, Defendant could authenticate by way of distinctive characteristics such as "contents, substance, [or] internal patterns . . . taken in conjunction with circumstances. Fed. R. Evid. 901(b)(4). While supporting documentation from Lason may be sufficient to support a finding of authenticity, ACB has failed to provide any type of evidence linking the blank form letter with Lason. For example, the letter may be authenticated if one of ACB's employees' stated that he or she had obtained the letter from Lason. Third, Defendant could authenticate the letter through evidence "describing a process or system used to produce a result and showing that the process or system produces an accurate result." Fed. R. Evid. 901(b)(9). This method of authentication is particularly useful in authenticating evidence generated by computers. Fed. R. Evid. 901(b)(9) Advisory Committee Note.

---

[11] The other examples provided by Fed. R. Evid. 901(b) are inapplicable as concerning either handwriting, comparisons, spoken words, public records, or ancient documents.

Under 901(b)(9), the proponent must "provide evidence of the input procedures and their accuracy, and evidence that the computer was regularly tested for programming errors." Lorraine, 241 F.R.D. at 549 n.26. Defendant has failed to present any evidence relating to the accuracy of Lason's computer system.

Given that Defendant has failed to properly authenticate the blank form dunning letter, the Court concludes that it is inadmissible.

**d. Plaintiff's Recorded Statement is Inadmissible.**

Defendant has submitted a purported transcript of a March 17, 2012 recorded personal phone call between Ms. Webster and Mr. Shnayderman, wherein plaintiff is told that she owes ACB money, to which she responds, "What; well, I kind of figured that."[12] (Def.'s Resp. to Pl.'s Rep., ECF No. 49, at 13). ACB argues that this transcript provides evidence that Ms. Webster had knowledge of ACB's attempts to collect this debt prior to

---

[12] New Jersey law generally prohibits such recording, N.J. Stat. Ann. § 2A:156A-24 (West 2014). However, there is an exception that allows this practice where the individual responsible for the recording is a party to the communication and does not have a criminal or tortious purpose. N.J. Stat. Ann. § 2A:156A-4 (West 2014); see Bradley v. Atl. City Bd. of Educ., 736 F. Supp. 2d 891, 899 (D. N.J. 2010) (granting summary judgment under the New Jersey statute to a defendant who had recorded conversations without the other party's knowledge). The circumstances here do not suggest a criminal or tortious intent on Mr. Shnayderman's part, and plaintiff has not so argued. While the Court is not making a finding on Mr. Shnayderman's intent, it will not reject the recorded statement on that basis at this time.

July of 2012, contradicting her position that she did not

receive the "dunning" letter in November of 2010. (Def.'s Resp.

to Pl.'s Rep., ECF No. 49, at 13).

At first blush, it would appear that this statement is

capable of admission as an opposing party's statement. Fed. R.

Evid. 801(d)(2)(A). Under the Federal Rules, an opposing

party's statement is not hearsay if made by the party in an

individual capacity and if offered against that same party. Id.

However, evading the hearsay prohibition is not the end of the

analysis, as the statement must still reflect the declarant's

personal knowledge. Plaintiff's use of the qualifier "kind of"

and "figured" is indicative of a lack of personal knowledge.[13]

Moreover and more critically, her statement in no way supports

an admission that she received <u>any</u> official notice from ACB

meeting the requirements of the FDCPA regarding the $70 medical

debt in question.

---

[13] According to the <u>Oxford English Dictionary</u>, the word "figure"
means "[t]o picture in the mind; to imagine."
http://www.oed.com/view/Entry/70080?rskey=ZbBuYX&result=2&isAdva
isAd=false#eid. Assuming for the sake of argument that ACB
could introduce evidence sufficient to support a finding that
this statement reflected Ms. Webster's personal knowledge, the
expression of the verb "figure" in the past tense demonstrates
that the statement looks backwards in time. This assures that
it is not admissible as a "statement of the declarant's then-
existing state-of-mind." Fed. R. Evid. 803(3) (stating that
this exception does not include "a statement of memory or belief
to prove the fact remembered").

Ms. Webster is entitled to summary judgment as a matter of law on Counts II and III. Thus, defendant does not dispute that it failed to satisfy the disclosure requirements mandated by § 1692g(a) [14] within five days of the initial communication, instead relying on its argument that notice was first sent at an earlier date. There is no genuine dispute as to any material fact regarding Count II, as the Court has rejected all the defendant's evidence purportedly controverting plaintiff's factual basis for her motion. Accordingly, Ms. Webster is entitled to judgment as a matter of law as to Count II.

Turning to Count III, Ms. Webster argues that ACB violated § 1692g of the FDCPA by failing to provide her with verification of the debt as she requested in her July 23, 2012, letter to the collection agency. (Pl.'s Mem. Supp. Pl.'s Mot. Summ. J., ECF No. 36-1, at 11). Defendant responds that Ms. Webster's July 23, 2012, letter did not request verification of the debt, as the correspondence stated that "[t]his is NOT a request for

---

[14] The written notice must contain: (1) the amount of the debt, (2) the name of the creditor to whom the debt is owed, (3) a statement disclosing that the debt collector will assume the validity of the debt unless disputed by the consumer within thirty-days after receipt of the notice, (4) a statement detailing that the consumer's exercise of her right to dispute the validity of the debt triggers an obligation for the debt collector to obtain verification of the debt and mail a copy to the consumer, and (5) a statement describing the consumer's right to request that the debt collector provide the consumer with the name and address of the original creditor if different from the current creditor. 15 U.S.C. § 1692(g)(1)-(5).

'verification' or proof of my mailing address, but a request for

VALIDATION made pursuant to the above named Title and Section."

(Def.'s Mot. Summ. J. & Opp. Pl.'s Mot. Summ. J., ECF No. 44, at

18-19) (citing Exhibit A of Pl.'s Mot. Summ. J., ECF No. 36-2,

at 4)).[15]

Subsection (b) of § 1692g provides that, in the event that

the consumer disputes the debt or requests the name and address

of the original creditor, the debt collector must "cease

collection of the debt" until the collection agency has provided

the consumer with verification of the debt or acquiesced to the

consumer's demand to provide the name and address of the

original creditor.  15 U.S.C. § 1692g(b).

Upon inspection of Plaintiff's initial letter to ACB, (ECF

No. 36-2, at 4), this Court concludes that the letter disputed

the debt as a matter of law, triggering ACB's duty to cease

communication with her until she had been provided with

verification of the same.  See 15 U.S.C. § 1692g(a)-(b).  Aside

from the above-quoted language requesting "validation" instead

of "verification," Plaintiff's July 23, 2012 letter to ACB

stated that she "disputed" the debt and requested that ACB

provide "competent evidence" of the obligation, such as

"**verification** or copy of any judgment."  (ECF No. 36-2, at 4)

---

[15] The "above named Title and Section" referred to 15 U.S.C. §
1692g.  (Exhibit A of Pl.'s Mot. Summ. J., ECF No. 36-2, at 4).

(emphasis added). Plaintiff also requested that ACB provide her with identification of the original creditor. (ECF No. 36-2, at 4). By borrowing nearly the exact language from § 1692g(a)-(b), Plaintiff triggered ACB's duty to verify the debt as well as the identity of the original creditor within thirty-days.

ACB argues that even if Ms. Webster requested verification, the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), 42 U.S.C. § 1320d et seq., prohibited ACB from complying until her identity could be verified. (ECF No. 56, 6). While it is true that HIPPA prohibits "covered entity[s]" from disclosing protected health information, 45 C.F.R. § 164.502(a), the Fourth Circuit has explained that "verification of a debt involves nothing more than the debt collector confirming in writing that the amount being demanded is what the creditor is claiming is owed. Chaudhry v. Gallerizzo, 174 F.3d 394, 406 (4th Cir. 1999) (citations omitted). To be sure, "[t]here is no concomitant obligation to forward copies of bills or other detailed evidence of the debt." Id. ACB itself concedes that it "may have been able" to provide Ms. Webster with verification of the debt without violating HIPAA. (ECF No. 56, 6 n.1). Given this admission and ACB's failure to provide Ms. Webster with verification of the debt, this Court finds that Ms. Webster is entitled to judgment as a matter of law on Count III.

### 3. Count IV: False, Deceptive, or Misleading Practices

Plaintiff alleges generally that ACB violated § 1692e of the FDCPA by acting in a deceptive, unfair, or unconscionable manner where the agency requested additional information from her on August 29, 2012, prior to verifying the debt, and again on September 12, 2012, after Experian provided ACB with verification of the debt. (Pl.'s Mem. Supp. Pl.'s Mot. Summ. J., ECF No. 36-1, at 13-14; Pl.'s Rep. Mem., ECF No. 47, at 19-20). Defendant responds that both its August 29, 2012, and September 12, 2012, requests for additional information were sent prior to the receipt of verification from Experian, ensuring that neither communication equates to a false, misleading, or deceptive representation. (Def.'s Mot. Summ. J. & Opp. Pl.'s Mot. Summ. J., ECF No. 44, at 19-20).

The Act prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. This section also provides a non-exhaustive list of "conduct" that falls within this general prohibition. Id. § 1692e(1)-(16). Though it is unclear which portions of § 1692e that Ms. Webster alleges were violated, it appears that this claim is grounded in § 1692e(5), which prohibits "[t]he threat to take any action that cannot legally be taken or that is not intended to be taken."

In the Fourth Circuit, the "least sophisticated debtor" standard applies to evaluate violations of § 1692e(5). <u>See United States v. Nat'l Fin. Servs. Inc.</u>, 98 F.3d 131, 136 (4th Cir. 1996) (adopting the same in evaluating an alleged violation of § 1692e(5)); <u>see also Jeter v. Credit Bureau, Inc.</u>, 760 F.2d 1168, 1175 (11th Cir. 1985) (phrasing the standard as whether the "least sophisticated consumer" would be deceived by the debt collector's representations). Even when evaluating Ms. Webster's claim under § 1692e(5) using this standard, it is difficult to find any threat of action, whether legally available or not, in either the August 29, September 12, or September 13 letters to Ms. Webster. The August 29 and September 12 communications contained requests for information. (ECF No. 36-5, at 1; ECF No. 36-7, at 1). The September 13 letter requested payment, but similarly contained no threat of further action. (ECF No. 36-8, at 1). Instead, Ms. Webster relies on several alleged procedural improprieties, principally that ACB mailed two requests for additional information while verification of the debt remained outstanding. To construe § 1692e(5) as including procedural improprieties would require an expansive reading of the statute, a reading for which Ms. Webster fails to cite any precedent. <u>See Bryant v. Wells Fargo Bank, Nat'l Ass'n</u>, 861 F. Supp. 2d 646, 665 (W.D.N.C. 2012) (declining to take such an expansive view of § 1692e(5)); <u>see</u>

also Hauk v. LVNV Funding, LLC, 749 F. Supp. 2d 358, 367 n.2 (D. Md. 2010) (stating that § 1692e(5) had not been implicated where the plaintiff failed to allege any threatened action that the defendant did not intend to take). Moreover, even assuming that ACB had sent the November 4, 2010 dunning letter, there is nothing in the form letter provided to this Court that would suggest any type of threatened legal action. (ECF No. 44-11, at 21-22). The letter requests payment and outlines the debtor's right to dispute the validity of the underlying obligation. Given that the totality of alleged communications sent by ACB to Ms. Webster do not contain any threat of legal action, this Court finds that ACB is entitled to summary judgment as to the claimed violation of § 1692e.

**4. Damages**

The Act provides that "any debt collector who fails to comply with any provision of th[e] [FDCPA] with respect to any person is liable to such person." 15 U.S.C. § 1692k(a). This broad language entitles any successful plaintiff to actual damages, costs, and a reasonable attorney's fee that is set by the court. Id. The court may also allow additional damages, subject to a $1,000 limit. Id. In considering whether to award additional damages, a court must consider "the frequency and persistence of [the debt collector's] noncompliance," "the

nature of such noncompliance," and "the extent to which such noncompliance was intentional." 15 U.S.C. § 1692k(b).

Plaintiff has requested $1,000 in statutory damages, costs, and attorneys' fees. Though the actions of ACB's employees that led to the FDCPA violations in this case were not intentional, the collection agency failed to maintain adequate procedures reasonably adapted to prevent the types of errors that occurred. Given that this oversight led to two FDCPA violations, the Court concludes that an award of $1,000 in statutory damages, and costs, and a reasonable attorney's fee is appropriate.

### V. CONCLUSION

For the reasons set forth above, the Court GRANTS Plaintiff's motion for summary judgment as to the first, second, and third counts but DENIES her motion as to the fourth count. The Court DENIES Defendant's motions for summary judgment as to the first, second, and third counts, but GRANTS the same as to the fourth count. The Court also DENIES Plaintiff's motion to strike.

Pursuant to 15 U.S.C. § 1692k(a)(2), the Court awards Ms. Webster $1,000 in damages, and costs and a reasonable attorney's fee, to be determined. Counsel for Ms. Webster is ordered to submit a petition with an appropriate affidavit and contemporaneous time records for the Court's consideration in

setting the costs and attorney's fee award, by May 9, 2014.

Defendant shall file any response by May 23, 2014.


Date: 4/22/14                           /s/
                                        Susan K. Gauvey
                                        United States Magistrate Judge